IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. HENSON, JR.                     *

Plaintiff                               *

v.                                       *         Civil Action No. JKB-17-1665

BEVERLY McLAUGHLIN, *et al.*,       *

Defendants                     *
                                              ***

## MEMORANDUM

Pending is a motion to dismiss or, in the alternative, motion for summary judgment filed by defendants Beverly McLaughlin, N.P., Krista Self (f/n/a Swan-Bilak), N.P., Robustiano Barrera, M.D., Ali Yahya, M.D., Janice Gilmore, R.N., Ava Joubert, M.D., and Colin Ottey, M.D.[1] ECF 26. Plaintiff has responded (ECF 27) and defendants have replied. ECF 28. Also pending is plaintiff's Motion for Temporary Restraining Order (ECF 30)[2] and defendants' opposition. ECF 31. Upon review of the papers filed, the court finds a hearing in this matter

---

[1] The Clerk shall amend the docket to reflect the correct spellings of defendants' names. Dr. Carlson was named in the initial complaint but never served. The complaint against him shall be dismissed.

Janice Gilmore, R.N., Ava Joubert, M.D., and Colin Ottey, M.D., were not named as defendants in plaintiff's initial complaint. He named them as additional defendants in a supplemental filing. ECF 14. Plaintiff alleges, "These (3) party defendants are important to the case and as to the sequence of events as described in the complaint. Defendant Gilmore hired Ottey and Joubert as prison doctors and they would have pertinent information regarding 2005-2016 claims of malicious and sadistic assaults made herein." ECF 14 at p. 2.

[2] Plaintiff filed several other documents with the court. ECF 29, 32, 33, and 34. Plaintiff's filings are difficult to decipher. To the extent plaintiff's responses raise new claims, such claims are not properly before the court and will not be considered in the context of this opinion.

His request for temporary restraining order will be denied. It is unclear from the filing what relief he seeks. Moreover, the motion is more of the same conclusional and bald allegations regularly raised by plaintiff regarding a vast conspiracy against him engaged in by prison staff. Plaintiff fails to satisfy any of the *Winter* factors and the motion must be denied. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be GRANTED and plaintiff's motion for injunctive relief DENIED.

## I. Background

The case was instituted upon receipt of a civil rights complaint filed by plaintiff James Henson, an inmate currently confined at the Western Correctional Institution ("WCI"). ECF 1. Plaintiff named as defendants Beverly McLaughlin, N.P., Krista Self (f/n/a Swan-Bilak), N.P., Robustiano Barrera, M.D., Ali Yahya, M.D. and Dr. Carlson. ECF 1 at 1. Plaintiff states that Nurse Practitioner Beverly McLaughlin, Krista Swan-Bilak, and Dr. Barrera denied him effective "daytime" medication for his allergies and for his "severe chronic pain." ECF 1-1 at p. 1. He claims that he requires a sling or a back brace for his pinched sciatic nerve, which causes him extreme lower back pain. *Id.* He states that he suffers from a "severely damaged left rotator cuff and right shoulder, left arm/hand goes limp and numb without warning." *Id.* He claims that he has cracked ribs, which cause him numbness. *Id.* He alleges that rear cuffing triples the pain. *Id.* He claims that defendants and unnamed prison guards deny him effective pain medication in order to "cover up year after year assaults ("murder")...." *Id.* He seeks the prescription of Ultram and Neurontin to treat his pain, a sling, back brace, MRI, and surgery. *Id.*

Since the filing of this complaint, plaintiff has filed numerous letters with the court, which were docketed as supplements to the complaint. ECF 8, 14, 15, 16, 17, 23 & 24. After the receipt of defendants' dispositive motion, he filed additional documents. ECF 32-34. Together, these documents contain a litany of plaintiff's complaints concerning the entirety of his incarceration.[3] The filings are difficult to decipher as plaintiff regularly files documents

---

[3] Plaintiff's claims of a far reaching conspiracy have been investigated and found unsubstantiated, resulting in the dismissal of the claims both administratively and judicially. *See, e.g., Henson v. Likin*, Civil Action No.

previously submitted in other cases and writes across them and around the margins. He references cases, administrative grievances, and filings dating back to the early 2000s. The filings refer to plaintiff's numerous previously filed cases to support his allegations of regular and continuous problems with prison staff. Those complaints, to the extent they have previously been litigated, will not be considered here. Lastly, to the extent the documents refer to events occurring after the specific events complained of in plaintiff's initial complaint, they are not properly before the court and also will not be considered.

**B.     Defendants' Response**

In support of their motion, defendants have submitted various exhibits, including the affidavit of Ava Joubert, M.D., and 74 pages of plaintiff's medical records. ECF 26-4 (Medical Records); ECF 26-5 (Joubert Affidavit).

Chart updates entered by psychology staff note that throughout 2016, plaintiff was described as reflecting persecutory and delusional ideas. ECF 26-4 at pp. 1-5. He regularly refused passes for appointments, made frivolous requests and claims, and declined to talk to psychology staff. *Id.*

Dr. Joubert avers that plaintiff is a 55-year-old inmate, currently housed at WCI, who suffers from hypertension and bilateral shoulder pain. ECF 26-5, ¶ 4. In 2017, it was observed that plaintiff suffered from reduced range of motion in both shoulders; however, Dr. Barrera believed plaintiff was exaggerating his symptoms. ECF 26-5, ¶ 4; ECF 26-4 at p. 15. On

---

RWT-11-2719 (D. Md.); *Henson v. Miller*, Civil Action No. RWT-12-763 (D. Md.); *Henson v. Lambert*, Civil Action No. RWT-12-3271 (D. Md.); *Henson v. Smith, et al.*, Civil Action No. RWT-13-2266 (D.Md.); *Henson v. Bishop*, RDB-14-2131 (D. Md.) (dismissing for failure to exhaust administrative remedies but noting affidavits of all correctional staff that they had not submitted false incident reports, encouraged the submission of falsified medical reports, or instructed anyone to house plaintiff with violent, dangerous gang members.) Those claims will not be addressed again.

March 31, 2017, he was assessed by Roy Carls, M.D., an orthopedist. CF 26-4 at p. 33. Plaintiff advised Carls he was diagnosed with a rotator cuff tear after an MRI, "several years ago." *Id.* Dr. Carls assessed plaintiff as likely suffering from a rotator cuff tear based on his history as well as acromioclavicular ("AC") joint degenerative joint disease. *Id.*; ECF 26-5, ¶ 4.

In order to treat plaintiff's reported pain, he has been prescribed a variety of medications over time, including Tylenol (325 mg and 500 mg), Motrin 800 mg, Amitriptyline Hcl, Cymbalta, muscle rub, and steroid injections. ECF 26-5, ¶ 4, ECF 26-4 at pp. 7, 11, 17, 20, 21, 26, 28, 31, 34, 37, 43, 48, 57, 60. Other than the steroid injection and Amitriptyline Hcl, plaintiff denied receiving any amelioration of his pain relief from these medications. ECF 26-5, ¶ 4; ECF 26-4 at pp. 41, 67 (reporting relief from injection). Instead, he sought the prescription of Ultram or Neurontin to treat his reported pain and admitted to medical staff that he self-medicated with those drugs. ECF 26-5, ¶ 4; ECF 26-4 at pp. 45, 54, 59. Plaintiff refused medical staff's offer to try Tegretol to alleviate pain. ECF 26-5, ¶ 4; ECF 26-4 at p. 59.

Joubert avers that "Ultram is a narcotic-like drug not indicated for long term treatment of chronic pain. Neurontin is an anticonvulsant with secondary affects on diabetic nerve pain that is not indicated in Plaintiff's diagnosed rotator cuff tear." *Id.* Joubert also indicates that the use of Neurontin can "implicate reactions to alcohol use, which is a consideration for Plaintiff." *Id.*; *see also* ECF 26-4 at p. 60 (indicating plaintiff's "alcohol reduction is continuing.").

On March 31, 2017, Dr. Carls recommended that plaintiff undergo physical therapy before returning to the orthopedist for further evaluation. ECF 26-5, ¶ 4, ECF 26-4 at pp. 20, 33. Plaintiff was referred for physical therapy (ECF 26-4 at pp. 47-48) but did not appear for his scheduled June 15, 2017, physical therapy evaluation. ECF 26-5, ¶ 4; ECF 26-4 at p. 62. There

4

is no indication in the dispositive motion filed on October 25, 2017, that plaintiff was scheduled to return to the orthopedist for further evaluation or that another physical therapy evaluation was scheduled.

Plaintiff's hypertension is managed and monitored in the chronic care clinic. ECF 26-5, ¶ 5. Joubert reports that plaintiff responded well to treatment and was taken off hypertension medication with good results. *Id.*; *see also* ECF 26-4 at pp. 26, 59. Staff considered discharging plaintiff from the chronic care clinic, but on June 13, 2017, his blood pressure was elevated. ECF 26-5, ¶ 5; ECF 26-4 at p. 59. As such, it was decided that plaintiff's hypertension would continue to be monitored in the chronic care clinic. His blood pressure is described by Joubert as generally within normal limits without the need for medication, but she notes that if his condition changes, then he will be placed back on medication. *Id.*

Joubert indicates that plaintiff sought placement on a high calorie diet but as he has a body mass index that identifies him as obese, a high calorie diet is contra-indicated. ECF 26-5, ¶ 6; *see also* ECF 26-4 at p. 60 (describing plaintiff's BMI as 36 and his weight reduction continuing.) Plaintiff was advised to lose, rather than gain, weight. ECF 26-6 at ¶ 6.

Plaintiff has submitted sick call slips complaining of low back pain or left side numbness and pain. ECF 26-5, ¶ 7; *see generally* ECF 26-4. When evaluated by medical providers, he focused instead on his shoulder to the exclusion of other complaints. *Id.* On May 12, 2017, plaintiff reported to a mid-level provider that his symptoms included popping, tingling in his arms, tenderness, and feeling like he had been stung by bees. *Id.*; ECF 26-4 at p. 46. Joubert indicates it is unclear whether he attributed these symptoms to his shoulder pain or an unrelated condition. ECF 26-5, ¶ 7.

In regard to his seasonal allergies, Joubert avers that plaintiff has been treated with Chlor-trimeton and Zyrtec. ECF 26-5, ¶ 8; *see also* ECF 26-4 at p. 23. Plaintiff complained they were ineffective and the Zyrtec was discontinued. ECF 26-5, ¶ 8. Plaintiff agreed to restart Chlor-trimeton. *Id.*

Joubert denies that plaintiff has been assessed with broken collar bones, cracked ribs, cancer, or a pinched sciatic nerve, as he alleges in his complaint and supplemental filings. ECF 26-5, ¶ 9.

Joubert further avers that a sling or back brace that would serve to immobilize or minimize movement is contraindicated for plaintiff's diagnosed conditions. ECF 26-5, ¶ 10. She indicates that exercise to increase rather than decrease plaintiff's range of motion is the appropriate course of treatment for his condition. *Id.*

Plaintiff is seen regularly in the chronic care clinic and has access to medical staff through the sick call process. Joubert avers that in her opinion, to a reasonable degree of medical probability, plaintiff has received appropriate medical treatment for his shoulder condition and pain. ECF 26-5, ¶ 11.

## II. Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Liberty Lobby*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248. Thus, "the judge must ask himself not whether he thinks

the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### III. Discussion

Plaintiff's claims regarding denial of medical care are governed by the Eighth Amendment of the United States Constitution, which prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To sustain a claim for denial of medical care under the Eighth Amendment, plaintiff must show that defendants' acts or omissions were done with deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Importantly, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). This is so because the Constitution "is designed to deal with

deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Id.* at 695-96.

The deliberate indifference standard regarding a serious medical need requires that plaintiff demonstrate that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff were aware of that need but failed to either provide treatment for plaintiff or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff must also demonstrate that the Medical Defendants behaved with "subjective recklessness" in the face of his serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Put differently, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (noting court must focus on the precautionary actions actually undertaken in response to the risk, not the actions that could have been taken). For plaintiff to prevail, the treatment rendered "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence or malpractice does not rise to the level of a constitutional violation. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)). "The right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

The evidence viewed in the light most favorable to plaintiff establishes that he received constitutionally adequate medical care for his shoulder injury during the time at issue in this case. Indeed, plaintiff attended regular medical appointments with qualified staff that provided ongoing attention to his pain management. He was provided examination and analgesic medication, referred to a specialist, and provided a conservative course of treatment, *e.g.*, steroid injections and physical therapy. Plaintiff's own conduct prevented him from receiving physical therapy. The record evidence demonstrates that plaintiff was regularly seen by a variety of health care providers who adjusted plaintiff's medications based upon his reports of their effectiveness and in an effort to provide him pain relief. Medical staff did not believe that

Ultram or Neurontin were indicated to manage plaintiff's pain both because of the nature of his pain for which these medications were deemed inappropriate and due to consideration of plaintiff's alcohol use.

Plaintiff's hypertension and allergies were regularly monitored. When appropriate, he received medication to treat both conditions. When he was able to be taken off of medication for high blood pressure, his medication was stopped but his condition continued to be regularly monitored by health care staff.

There is no objective evidence that plaintiff suffers from the other conditions he alleges: broken collar bones, broken ribs, cancer, or pinched sciatic nerve. Likewise, there is no evidence that the additional medical care he seeks—a sling, back brace, and change in medication—is medically indicated. Plaintiff's medical provider avers that Ultram, Neurontin, the sling, and the back brace are specifically contra-indicated to treat plaintiff's diagnosed conditions.

When viewing the evidence as a whole and in the light most favorable to plaintiff, no evidence exists that plaintiff's treatment amounted to deliberate indifference. *See Estelle*, 429 U.S. at 105-06 (holding that an inadvertent failure to provide adequate medical care does not amount to deliberate indifference). Indeed, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). No exceptional circumstances exist here. The medical records and Joubert's affidavit demonstrate sound reasons for the course of treatment that are unrebutted by plaintiff.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, or in the alternative for summary judgment, will be granted and judgment will be entered in favor of defendants. Plaintiff's complaint against Dr. Carlson will be dismissed without prejudice. Plaintiff's request for injunctive relief will be denied. A separate Order follows.

Dated this 6 day of Aug, 2018.

FOR THE COURT:

James K. Bredar
Chief Judge